2L 393
8L 509
10L 227

E. W. MUMFORD *et al.* *v.* MEMPHIS & CHARLESTON
RAILROAD COMPANY.

1. CONTRACT WRITTEN. *Latent ambiguity.* *Evidence.* *Parol.* B. was appointed ticket agent of the M. & C. R. R. Co. at Memphis, and gave bond to cover his duties as such. There were two ticket offices kept by said company there—the one at the depot, and the other on Court street—but B.'s bond did not show to which he was appointed. *Held,* that these facts presented a case of latent ambiguity, which might be removed by introducing parol evidence to show to which B.'s appointment related.

2. SAME. *Same.* *How written contracts should be construed by courts.* In order to arrive at the intention of the parties to a written instrument, the court should place itself, as near as it can from the facts, in the position of the parties, so as to see what they saw and contemplated as their undertaking. And while the obligation of an instrument is to be gathered mainly from its terms, yet to what that obligation applies and what duties are to be secured in their performance by an instrument, can fairly be ascertained alone from the surrounding circumstances and the known course of business in such matters.

3. BOND. *Securities.* *Good faith.* Whoever becomes answerable for another is entitled to suppose that the transaction is in the usual course of business, and will not subject him to extraordinary risks that could not have been anticipated. In such cases entire good faith is due to

the surety, and if any fact material to his interest increasing his responsibility be concealed from him, it will operate to release him.

4. SAME. *Sureties. Released how.* After parties have become answerable for another as agent, any material change in the character of the business increasing the responsibility of the agent, and the risks of the sureties above what was fairly contemplated by them, must, on sound principle, release them from obligation on their contract. So, where B. was appointed to one of two ticket offices of M. & C. R. R. Co. at Memphis, and gave bond as such agent, and afterward the duties and responsibilities of both offices were imposed upon him with increased compensation, without the assent of his securities, it was held that this was such a change of the business and enlargement of the responsibilities of the agent and risks of the sureties as would discharge them.

### FROM SHELBY.

Appeal in error from the Second Circuit Court of Shelby County. IRVING HALSEY, Judge.

ESTES & ELLETT, T. B. TURLEY and E. W. MUMford, for Mumford *et al.*

HUMES & POSTON for M. & C. R. R. Co.

FREEMAN, J., delivered the opinion of the court.

The suit is on a bond dated January 12, 1866, given by Adolph Bernard, as ticket agent of the road, with defendants and others as sureties. The suit is only here against the two sureties, Mumford and Chidester, Bernard having absconded. Judgment was rendered against them in the court below by the presiding judge, a jury having been waived by the parties, and appealed in error to this court.

The bond is in the sum of $8,000, for the payment of which the parties bind themselves in the usual form. The condition of the bond is:

"Whereas, the said A. Bernard has been appointed ticket agent at Memphis, on the Western Division of the Memphis and Charleston Railroad, now, therefore, if the said A. Bernard during his term of office shall faithfully perform all the duties of said office, and in all respects so conduct the same without detriment or loss, by his act or default, to the said Memphis and Charleston Railroad Company, then this obligation to be null and void; otherwise it shall continue in full force and virtue." [Signed by the parties.]

The breach of the bond assigned is in failing to account to plaintiff for large sums of money received by him from the sale of passenger tickets during the months from January to September inclusive, of the year 1866—in all, the sum of $6,958.57, as shown by an itemized account taken from the books of the company, made profert of in the declaration—which sum, with interest on the same from 19th of October, 1866, is claimed and sued for. The suit was commenced 21st day of January, 1867.

There was no motion for new trial, but a bill of exceptions was taken embodying the testimony heard by his Honor, with his rulings on the matters of law presented for decision on which he based his judgment.

It appears from the record, that at the time of the appointment of Bernard, there existed two ticket offices in the city of Memphis, one at No. 13 Court street, in the business part of the city, the other at the depot of the company. The first office was filled and had been by P. Patterson & Bro., they being under a bond of ten thousand dollars for the faithful

performance of their duties. At this office it seems the larger sales were made, and receipts considerably more than at the depot office. Such was the state of things when the bond sued on was given. On the 1st of June, 1866, Patterson & Bro. were discharged, and Bernard assigned to duty in that office during the larger part of the day, but required to close that office and be at the depot office so as to open the ticket office and commence selling tickets half an hour before the starting of the passenger train, as required by law.

These offices had existed separately as stated from the time the railroad had been completed, perhaps eighteen years up to date of discontinuance, June 1st, 1866, the one agent having no right, or at any rate never having been accustomed to sell tickets at the office of the other. One office was known as Memphis depot office, the other as Memphis city office. Bernard's salary, which had been seventy-five dollars per month before the new arrangement, was increased to one hundred or one hundred and twenty-five dollars per month. Patterson & Bro.'s had probably been one hundred dollars.

Proof was introduced tending to show that the sureties had not been notified of the consolidation of the two offices, and probably knew nothing of it until after the defalcation in September.

No motion having been made in the court below for a new trial, if there had been a jury, there could be no error assigned upon the finding of the facts, and we take it the same rule must be held to apply

where a jury is waived, and the judge acts both as judge and jury. The rule laid down in the case of *Wells* v. *Mosley,* 4 Col., 405, that "if the court can see from the record that the court below has committed material error affecting the merits of the cause, this court will reverse, whether a new trial was asked or not, but if the error in such case is to the action of the jury on the facts, this court will not reverse, unless the court below had been asked to correct the error and refused to do so," we think is a sound one, and comports with analogous holding on such questions, such as that the court must be requested to give additional instructions when desired, or this court will not reverse for failure to charge on such questions.

This brings us to the leading question in the case, the one on which it mainly turns, that is, whether the consolidating of the two offices, by dispensing with the agency at 13 Court street, and assigning Bernard to the duties of both offices, is such a change of the duties and addition to the responsibilities of the sureties as was not fairly contemplated by and embraced in the terms of the contract of the parties, construed in the light of existent facts and the known objects of the appointment, and the established course of business appertaining to the office to which Bernard was appointed, and for the faithful performance of the duties for which defendants became bound as sureties. This we think the fair scope of the question presented for our decision on this aspect of the case.

While it is true, as said by this court in *Chaffin*

v. *Gullet et als.,* 2 Sneed, 282, "parol evidence cannot be admitted, to vary or alter or explain the intentions of the parties as expressed in a written instrument," yet it is no less true, that application must be given to the contract by the surrounding circumstances, as we have said in several cases, in order to this, that we may clearly arrive at the intention of the parties, that to which their minds mutually assented, on which there was an agreement in the strict sense of the term, the court should place itself as near as it can from the facts, in the position of the parties, so as to see what they saw and contemplated as their undertaking. This must be arrived at mainly from the terms of the instrument, it is true, so far as the obligation is concerned, but what that obligation applied to, and what duties were to be secured in their performance in a case like the present, can fairly be ascertained alone from the surrounding circumstances.

It is the case of a latent ambiguity. On the face of the bond the contract is for the performance of the duties of ticket agent at Memphis. There are two offices at that point. To which was Bernard appointed is material, yet the writing does not show. The one not vacant is shown to have been filled at the time with an officer or agent under bond for the performance of its duties. The other was vacant, and an open position to be sought by parties desiring the situation.

Bernard no doubt sought this office through the usual means, the influence of his friends. The prob-

Mumford *v.* Railroad.

abilities are that these sureties, as such friends, aided in pressing his claims for this vacant place—certainly knew to which office he was appointed. Such is the known course of business in such matters, and that the fact was so, is not, to say the least of it, a strained inference from what we have stated.

This being so, to say that we shall shut out the light of the facts, when we come to ascertain the application of the terms of this contract, or to say that the parties under such circumstances did not contract with reference to them, would be to exclude the most essential knowledge to be had as to what the undertaking referred to, and to assume that the parties contracted either blindly and generally, or for what in fact these circumstances definitely show they did not agree to, nor were even expected to assent to, that is, an agency in the occupied office at Court street.

Such a rule would not only not be to put ourselves in their places, to see what they saw, ascertain what they agreed to, but would be to take a different standpoint, see contrary to what they saw, and hold they agreed to what they certainly did not agree, that is, on the part of the makers of the bond, and what is equally certain the other parties did not believe or require they should agree to, because as far as seen, the other place was filled by a competent agent, and his displacement was not contemplated at the time, nor probably thought of for months after the contract of the sureties was made. A man who becomes answerable for another is entitled to suppose

that the transaction is in the usual course of business, and will not subject him to extraordinary risks that could not have been anticipated.    2 Am. L. Cases, 479.

Entire good faith is due to the surety, and if any fact material to his interest, increasing his responsibility, be concealed from him, it will operate to release the surety.    We take it that this principle is unquestioned.    If at the time of taking this bond, the company had determined to discontinue this office and impose its additional burdens, as well as largely increased receipts upon Bernard, it can scarcely be doubted that it would have been its duty to have informed the sureties of such a purpose.    It would have been a fact peculiarly within its own knowledge, one which the surety could not in the exercise of ordinary prudence have known.    Its concealment under such circumstances would have been a fraud upon the sureties.    If this be so, the doing so afterward without notice or the assent of the sureties, must amount to the same thing.

The fact that no such concealment is shown or such purpose existed, demonstrates, however, that no such contract was contemplated by either party, therefore was not the contract entered into by the sureties, unless we say they did what they did not know, and the other received what it did not purpose, that is, a guaranty for the performance of duties not then purposed to be imposed on the agent then appointed. This reasoning would seem to be conclusive.    What should be the result of this?

Many authorities we think may be cited in support of this view, some of which even go beyond what we feel inclined to hold at present. In some of the English cases it is even held that in the case of an agent for the sale of coal, where it was stated in the bond that he was to have one hundred pounds per annum as a salary, which was afterward changed to a commission on the amount of the sales, it was held that this change in the mode of remuneration relieved the surety from responsibility, on the ground that it was a material change in the contract of the parties, and the sureties had the right to stand precisely on the facts recited in their contract. *Northern R. Co. v. Whinray*, 26 Eng. L. & Eq. R., 488. As we have said, we think this case carries the doctrine too far.

The case of *Bonar* v. *McDonald*, 1 English Law and Equity Reports, 1, better illustrates the true principle. In that case it was held, where a bank, without the knowledge of the sureties, increased the salary of the agent, he undertaking to bear one-fourth part of all losses which he incurred by his discounts, the sureties on his bond were held discharged. Here the change of salary was also accompanied by an additional stipulation increasing the burden of the agent. In this case, though it did not appear that the loss had occurred from the discounting business, but consisted of a balance due from a customer of the bank, who had been permitted by the agent to overdraw his account to an unusual and unreasonable extent, without security, yet the Lord

26—VOL. 2.

Chancellor, delivering the judgment of the House of Lords, said : " But if the arrangement as to the discounts altered the subsisting contract between the bank and its agent, so as to increase the liability of the latter, his sureties may be discharged for all purposes." Such is the law of England and Scotland, and so numerous cases hold. See cases cited in note of American Editor to p. 8, L. & Eq. R.

The true principle is very well stated by Mr. Fell in his work on Guaranty and Suretyship, page 248 : " So in case of a continuing or subsisting guaranty, any material change in the manner of dealing between the principal and the creditor will discharge the guarantor or surety."

And so we think in a case like the present, any material change in the character of the business increasing the responsibility of the agent above that which was fairly contemplated by the sureties, must on sound principle release them from obligation of the contract entered into to indemnify only against the legitimate risks and responsibility of the position to which the agent was appointed, and not the added responsibility of the sales of another office, then filled by another agent.

In fact, the change was almost precisely that of imposing upon the securities the additional responsibility covered by the bond of Patterson & Bro. at the time of their contract. Surely this cannot be allowed without consultation or assent.

The two offices, as we have seen, were distinct and separate, and had been probably for eighteen

years, the one known as the depot office, the other as the city office. The undertaking for the one can not be held to extend to the other without doing violence to the truth of the case, and making a contract, not construing and carrying one out as understood by the parties at the time.

The argument of Parker, C. J., in the case of the *Boston Hat Manufactory* v. *Messinger*, 2 Pickering, 232, may well close this view of the question on the affirmative phase of it. He says: "It must be presumed that the sureties had regard to the known course of transacting business when they consented to become responsible, and if it should be materially changed so as to increase the risk without their consent, they would in equity be exonerated from their liability, and if the principles of equity in relation to sureties was adopted and enforced at law, the bond would be avoided." This is conformable to the principles of justice and to the essential nature of contracts, for if an obligation is valid because it is evidence of the consent of a party to be bound, it surely cannot be converted into a different engagement which never had his consent, and we find cases decided both at law and equity have enforced this principle of natural justice.

That like defenses may be made in law as in equity in a somewhat analogous question, that is, release of surety by the creditor abandoning a security taken for the debt, we have lately held in the case of *Renegar* v. *Thompson*, Lea, 457.

In reply to the argument of counsel for plaintiff,

that it could not be seriously contended that the company could not change the number of its employees either by increase or diminution, we would but say, that is not the question in this case. But the real question is, whether the company can accept an obligation guaranteeing faithfulness in an office to which a party is appointed, and then add the duties of another like office to it, thereby increasing the receipts more than double, consequently the risks of the sureties, as well as in like degree increasing the temptations of the agent to appropriate such increased proceeds, and then hold the parties to responsibility for this new engagement without notice or assent.

That the company understood they were imposing heavy additional burdens on the agent, is evidenced not only by the well-known additional receipts in the new position, but by the fact that although motives of economy had prompted the change, yet the salary in the new and more responsible position was increased for the additional burden and responsibility, from seventy-five to one hundred and twenty-five dollars, as one witness says, but certainly to one hundred dollars per month.

We do not deem it necessary to go into an examination of the various cases cited by plaintiff. Suffice it to say, they are mainly if not all cases where the duties of the precise office to which one party has been appointed have been in some degree changed, but in the legitimate course of business, and not the additions of another office with its burdens. Whether all of them are precisely reconcilable with the view of

this opinion, we will not stop to inquire. If they are, or any of them hold differently, we do not approve such holding. We believe, however, they do not, when analyzed, conflict in the least with the principle of this opinion when fairly considered.

Other questions discussed need not be examined, as this is conclusive of the result in this case.

Rendering the judgment that should have been rendered by the court below, we reverse the case, and direct judgment to be entered for the defendants.